UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WESTGATE COMMUNICATIONS, LLC, a Washington limited liability company, d/b/a/ "WEAVTEL",<br><br>       Plaintiff,<br><br> v.<br><br>CHELAN COUNTY,<br><br>       Defendant. | NO: CV-08-004-RMP<br><br>ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

  Plaintiff Westgate Communications, LLC, is a Washington limited liability company doing business as "WeavTel" ("WeavTel"). WeavTel is a private utility company licensed under federal and state law to provide telecommunication services to other service providers and toll services to the general public (Ct. Rec. 1 at 2). Defendant Chelan County ("County") is a political subdivision of the State of Washington. Plaintiff claims violations of equal protection and substantive and procedural due process rights in violation of 42 U.S.C. § 1983. Therefore, the Court has subject matter jurisdiction of WeavTel's federal law claims pursuant to 28 U.S.C. § 1331. Before the Court are Defendant's motion for summary judgment

ORDER REGARDING SUMMARY JUDGMENT ~ Page 1

(Ct. Rec. 26), Plaintiff's response (Ct. Rec. 100), and Defendant's reply (Ct. Rec. 126).

In its complaint, WeavTel alleged a tortious interference with business relationship claim under state law (Ct. Rec. 1 at 16). However, during oral argument, WeavTel conceded that the Court is justified in dismissing the tortious interference claim, because WeavTel did not submit any evidence or argument in support of that claim. Therefore, the Court grants summary judgment on Plaintiffs' claim of tortious interference with business relations. Defendant moves the Court to dismiss Plaintiff's remaining claims.

## I.  BACKGROUND

In 2002, the Washington Utilities & Transportation Commission designated WeavTel as an Eligible Telecommunications Carrier (Ct. Rec. 1 at 3). The Federal Communication Commission ("FCC") also designated WeavTel an "incumbent local exchange carrier" for purposes of receiving federal universal service support and participating in the National Exchange Carrier Association (Ct. Rec. 1 at 3). These designations authorized WeavTel to provide wire line and fixed wireless telephone service and construct a new local telephone exchange to serve the area in and around the town of Stehekin in unincorporated Chelan County (Ct. Rec. 1 at 3). It is undisputed that many citizens in the Stehekin area objected to WeavTel's project (Ct. Rec. 1 at 7; Ct. Rec. 27 at 14; Ct. Rec. 126 at 14).

On March 23, 2005, after receiving the state and federal designations, WeavTel applied for an Administrative Use Permit ("AUP") from Defendant Chelan County in order to construct telecommunications structures and facilities on private property (Ct. Rec. 1 at 7). The parties dispute whether the AUP application was comprehensive and complete (Ct. Rec. 27 at 3). The County objected that part of the WeavTel property was within the boundaries of a floodplain and therefore subject to additional permit requirements through the Federal Emergency Management Agency ("FEMA"), the Shoreline Management Act ("SMA"), and the Chelan County Shoreline Master Program ("CCSMP") (Ct. Rec. 27 at 4; Ct. Rec. 27 at 14). Because of its alleged incomplete status, WeavTel's first AUP application expired on July 19, 2005 (Ct. Rec. 27 at 3).

WeavTel claims it continued to try to meet the County's objections while also successfully applying for and receiving a conditional letter of map amendment ("CLOMA") with FEMA findings that WeavTel's planned facilities were not within a flood hazard area (Ct. Rec. 1 at 5). WeavTel argues that FEMA's findings in effect changed the County's floodplain maps because the County's maps are adoptions of FEMA's floodplain maps (Ct. Rec. 100 at 4). The County disputes this contention.

WeavTel filed a second AUP application on September 20, 2005 (Ct. Rec. 1 at 6). On October 27, 2005, WeavTel supplemented its application with additional materials including the favorable CLOMA from FEMA which confirmed that the

project proposed by WeavTel did not lie within the flood hazard area, the boundary which defines the County's shoreline jurisdiction (Ct. Rec. 1 at 8; Ct. Rec. 127 at 6; Ct. Rec. 49-10).  The County responded by stating that WeavTel still was subject to Chelan County shoreline's jurisdiction and argued that WeavTel's second AUP application was incomplete because FEMA had not issued a final letter of map amendment ("LOMA") in connection with the project (Ct. Rec. 1 at 8-9; Ct. Rec. 7 at 5).  WeavTel argues that because FEMA does not issue a final LOMA until after a project is complete that the County was creating an impossible condition precedent by requiring WeavTel to obtain a LOMA prior to approval of the AUP or completion of the project (Ct. Rec. 1 at 10; Ct. Rec. 7 at 5).  WeavTel argues that the County should have considered the AUP application complete upon FEMA's issuance of the CLOMA.

Despite its position that the SMA and CCSMP did not apply to its property because of FEMA's CLOMA, WeavTel agreed to submit a formal request to the County to have a portion of its property rezoned in order to receive the desired AUP (Ct. Rec. 1 at 12; Ct. Rec. 27 at 4).  WeavTel's formal rezoning request, made with the County's encouragement, was for the portion of the property lying below 1106.5 feet mean sea level ("msl") to be officially removed from the County Frequently Flooded Areas Overlay District ("FFAOD") mapping (Ct. Rec. 1 at 12; Ct. Rec. 27 at 4).

A hearing before the Board of Chelan County Commissioners ("BOCC") was held on February 28, 2006. A study conducted by the Chelan County Public Utility District No. 1 found that the correct base flood elevation for WeavTel's property was not 1106.5, as determined by FEMA, but was instead a more restrictive and higher 1108.24 feet msl (Ct. Rec. 1 at 12). This higher base flood elevation put a greater percentage of WeavTel's property within the floodplain and thereby further limited where WeavTel could build on the property. Allegedly, the higher base flood elevation data was submitted by opponents of WeavTel's project (Ct. Rec. 1 at 12).

At a February 28, 2006 hearing on the rezoning issue, the BOCC denied WeavTel's rezoning request, causing greater delay. There are multiple, conflicting explanations for the BOCC's denial. The County argues that WeavTel could have moved orally to amend the flood plain level at the February 28, 2006, hearing from 1106.5 msl to the more restrictive 1108.24 msl and the County would have granted the AUP (Ct. Rec. 27 at 12). Accordingly, any delay would have been WeavTel's fault (Ct. Rec. 27 at 12; see Ct. Rec. 27 at 15). However, as WeavTel points out, the official minutes of the February 28, 2006 hearing show that WeavTel did make an oral request to amend the floodplain zone to the more restrictive 1108.24 feet msl at the February 28, 2006 hearing, but the County denied the request (Ct. Rec. 44-1 at 8).

On March 1, 2006, WeavTel submitted a second application for a change to the FFAOD mapping relying on the higher base flood elevation of 1108.24 (Ct. Rec. 1 at

ORDER REGARDING SUMMARY JUDGMENT — Page 5

13). At a hearing on June 6, 2006, the BOCC denied the second application. The only explanation given for the denial by the BOCC was a Commissioner's statement that the application did "not pass the straight face test" (Ct. Rec. 44-1 Ex. E[1]).

On June 9, 2006, WeavTel filed an appeal of the BOCC's denial of the FFAOD map amendment in the Chelan County Superior Court under the Land Use Petition Act ("LUPA") (Ct. Rec. 1 at 13; Ct. Rec. 7 at 7; Ct. Rec. 49-12 Ex. Z.) In September of 2006, the parties reached a stipulated agreement granting the rezoning and the issuance of an AUP (Ct. Rec. 1 at 13; Ct. Rec. 7 at 7; Ct. Rec. 49-13 Ex. AA).

The County found that the AUP application was complete in October of 2006 and finally approved the AUP thirteen months later in November of 2007 (Ct. Rec. 1 at 15; Ct. Rec. 7 at 8). WeavTel filed a lawsuit claiming that the County's actions were arbitrary and capricious and deprived WeavTel of its federal civil and constitutional rights (Ct. Rec. 1 at 15). WeavTel claims significant monetary damages as a result of the delays in obtaining the AUP.

---

[1] Defendant objects to admission of the "not pass the straight face test" on the basis of hearsay, but the Court overrules Defendant's objection for purposes of this motion.

ORDER REGARDING SUMMARY JUDGMENT                                   Page 6

## II.  APPLICABLE LAW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A key purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  The moving party must demonstrate to the Court that there is an absence of evidence to support the non-moving party's case.  *See Celotex Corp.*, 477 U.S. at 325.  The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).  At summary judgment, the court draws

all reasonable inferences in favor of the nonmoving party. If the nonmoving party produces evidence that contradicts evidence produced by the moving party, the court must assume the truth of the nonmoving party's evidence with respect to that fact. *T.W. Elec. Service, Inc.*, 809 F.2d at 631. The evidence presented by both the moving and non-moving parties must be admissible. Fed. R. Civ. P. 56(e).

As a preliminary matter, Defendant argues that Plaintiff failed to submit admissible evidence to refute Defendant's motion for summary judgment. The advisory committee notes for Fed. R. Civ. P 56 state that supporting documents outside of affidavits may be used in a summary judgment motion. *Id.* WeavTel did file affidavits and other documents in support of their opposition to the County's summary judgment motion (*See* Ct. Rec. 44, 45, 49). The Court has addressed Defendant's evidentiary objections to WeavTel's submissions in a separate order and has not considered the excluded evidence for purposes of this summary judgment analysis.

**A. Whether the County's actions deprived WeavTel of constitutional rights in violation of 42 U.S.C. § 1983**

Section 1983 requires a claimant to prove that he was deprived of some right, privilege, or immunity protected by the Constitution or laws of the United States by an action taken under color of state law. *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988). A person deprives another "of a constitutional right, within the meaning of

section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that 'causes' the deprivation of which [the plaintiff complains]." *Redman v. County of San Diego*, 942 F.2d 1435, 1439 (9th Cir. 1991)(brackets in the original), cert. denied, 502 U.S. 1074 (1992); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Under 42 U.S.C. § 1983, a party can recover for a constitutional tort only if the defendants acted under color of state law, that is "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by a local governing body's officers and causes the constitutional violation," *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690 (1977).

The parties agree that first prong of §1983 (a person acting under color of state law) is not in dispute (Ct. Rec. 27 at 6; Ct. Rec. 100 at 22). Chelan County Planners and Commissioners acted under color of state law (Ct. Rec. 27 at 6; Ct. Rec. 100 at 22). What is in dispute is whether Chelan County committed an act that deprived WeavTel of some right, privilege, or immunity protected by the Constitution or laws of the United States. *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988).

In order to determine whether WeavTel's §1983 claim should be dismissed, the Court will analyze WeavTel's Constitutional claims to determine whether any violations of Constitutional rights occurred.

## 1. Equal Protection Claim

In its complaint WeavTel alleges that the County deprived it of "civil and constitutional rights, including WeavTel's right to equal protection of the laws and to both substantive and procedural due process under the United States Constitution" (Ct. Rec. 1 at 15). During oral argument, the County contested both whether WeavTel made an equal protection claim in its complaint and whether any corporation could bring an equal protection claim.

Corporations are able to bring equal protection claims. *See RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1057 (9th Cir. 2002) (stating corporations "are also persons who, under the Fourteenth Amendment, have a constitutional right to the equal protection of the laws"). However, neither party briefed the equal protection claim for this summary judgment motion. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Therefore, viewing the facts in the light most favorable to the nonmoving party, WeavTel, the Court finds that the County is not entitled to

judgment as a matter of law on WeavTel's equal protection claim. *See Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir 2000).

//

**2.     Due Process Claims**

With property permits, "[a] substantive due process claim does not require proof that all use of the property has been denied, but rather that the interference with property rights was irrational or arbitrary." *Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir. 1988). Black's Law Dictionary defines arbitrary in part as: "[F]ounded on prejudice or preference rather than on reason or fact." *Black's Law Dictionary* 119 (9th ed. 2004).

WeavTel argues that in order to support its substantive due process claim that it must show that the County acted in an arbitrary way (Ct. Rec. 100 at 22)(citing *Bateson v. Geisse,* 857 F.2d 1300, 1303 (9th Cir. 1998)). However, the County argues that in addition to "arbitrary and capricious" (Ct. Rec. 27 at 9; Ct. Rec. 126 at 8-10), WeavTel must prove that the County acted with "ill-will or malice" (Ct. Rec. 126 at 13), and "hostility and animus" (Ct. Rec. 126 at 15). For support, the County relies on *Claybrook v. Birchwell*, 199 F.3d 350 (6th Cir. 2000) (requiring that the plaintiff prove that the law enforcement officers acted with malice), and *Revels v. Vincenz*, 382 F.3d 870 (8th Cir 2004) (requiring that the

plaintiff prove that the defendant, a state employee of a psychiatric hospital, acted with malice (Ct. Rec. 126 at 15). Neither of these cases addressed property issues and neither case is controlling precedent in this circuit. There is no controlling authority submitted that supports that the Ninth Circuit requires evidence of "ill will" or "malice" in a case involving a permit for property use.

Therefore, the first question that the Court addresses is whether the County was "irrational or arbitrary" in not granting WeavTel's first or second AUP applications.

To properly plead a procedural due process claim, WeavTel must establish that (1) it had a protectable property interest in its rezoning application and (2) that it was denied this property right without the process which was due under the circumstances. *See Bateson v. Geisse*, 857 F.2d 1300, 1305 (9th Cir. 1988). "A property interest in a benefit protected by the due process clause results from a 'legitimate claim of entitlement' created and defined by an independent source, such as a state or federal law." *Bateson,* 857 F.2d 1300, 1305 (9th Cir. 1988), *quoting Parks v. Watson,* 716 F.2d 646, 656 (9th Cir. 1983). In *Bateson v. Geisse*, the Plaintiff could not show an entitlement of approval because the local ordinance left the agency with "unbridled discretion." *Bateson*, 857 F.2d 1300, 1305 (9th Cir. 1988).

In a similar zoning case, Judge Posner discussed the somewhat fuzzy line between substantive and procedural due process:

> [T]he line between "procedure" and "substance" is hazy in the setting of the regulation of land uses. The denial of the plaintiffs' site plan without a full statement of reasons is what gives the denial such arbitrary cast as it may have, and thus lends color to the claim of irrationality, which is the substantive due process claim; but the failure to give reasons is also the cornerstone of the procedural due process claim. It is no good saying that if a person is deprived of property for a bad reason it violates substantive due process and if for no reason it violates procedural due process.

*Arroyo Vista Partners v. County of Santa Barbara*, 732 F.Supp. 1046, 1052 (C.D. Cal. 1990)(*citing Sinaloa Lake Owners Assn v. City of Simi Valley*, 882 F.2d. 1398, 1410 n 14 (9th Cir 1989)). In this case, there is a hazy line between the substantive and procedural due process claims. Therefore, the Court will analyze both due process claims together for purposes of this summary judgment motion.

### III. ANALYSIS

Fundamentally, there are two questions at issue: (1) whether the County was irrational and arbitrary when it refused to acknowledge FEMA's issuance of a CLOMA as satisfying the required flood plain amendment process; and (2) whether the County violated WeavTel's substantive and procedural due process rights by repeatedly denying WeavTel's motions for rezoning (Ct. Rec. 100 at 19). The issue at the summary judgment stage is whether these are genuine issues of material fact appropriately addressed by a jury.

The parties agree that FEMA floodplain designations control Chelan County Frequently Flooded Areas Overlay District map amendments ("FFOAD") (Ct. Rec. 127 at 5). Consequently, the parties also agree that a FEMA floodplain map amendment would have moved WeavTel's property outside of the Chelan County Shoreline Master Program ("CCSMP") and the Shoreline Management Act ("SMA") (Ct. Rec. 127 at 5, stating "any subsequent [FEMA] revisions thereto are hereby adopted by reference"). The parties dispute what constitutes a floodplain map amendment sufficient to satisfy the CCSMP and the SMA requirements.

The County, relying on testimony by a former County planner, Mr. Frampton, argues that only final approval from FEMA, such as a LOMA, would be necessary. (Ct. Rec. 31 at 14)(stating that "[a]fter review and discussion with FEMA and county staff, it was identified to the permittee that only a final approval from FEMA would remove the property from the floodplain and change FEMA floodplain mapping"). The County also contends that in lieu of a LOMA that WeavTel could have applied for rezoning of the property at the local level, which is the process that WeavTel eventually followed when the County would not accept the CLOMA (Ct. Rec. 31 at 19).

WeavTel argues that a CLOMA constitutes a "revision" under Chelan County Code for two main reasons. First, the County's recognition that there was a FEMA permit process available to WeavTel that would have allowed WeavTel to

receive its AUP (Ct. Rec. 27 at 4) ("WeavTel appeared unable or unwilling to solve through the regular permitting process—involving FEMA").  Second, FEMA's permit process prohibiting issuance of a LOMA before an AUP is issued.  A CLOMA can be issued before construction after FEMA has been shown proof that proposed construction will not be built in a floodplain (Ct. Rec. 49-10, Ex. N[2]).  FEMA will issue a LOMA only after construction and with evidence that the construction was built as proposed in the CLOMA.  Accordingly, as Mr. Frampton concedes and WeavTel points out, the County's position creates a "Catch-22" for WeavTel:  construction cannot occur until FEMA has issued a LOMA, and FEMA cannot issue a LOMA until construction is complete (*see* Ct. Rec. 127 at 7-8).

It is not clear from the record whether a LOMA is the only acceptable FEMA revision under the Chelan County Code or whether a CLOMA should have been acceptable.  The County's position that only a LOMA is acceptable is particularly problematic given the fact that (1) a LOMA only can be issued after a building project is complete (Ct. Rec. 49-10, Ex. N); (2) the County's planner acknowledges that he was unfamiliar with FEMA's procedures of approval (Ct. Rec. 31 at 17); and (3) the County appears not to have understood the "Catch 22"

---

[2]  The Court overruled Defendant's objections to Exhibit N for purposes of this motion (see Order Addressing Defendant's Motions to Strike).

ORDER REGARDING SUMMARY JUDGMENT — Page 15

aspect of requiring a LOMA prior to granting the AUP (Ct. Rec. 27 at 4). In fact, in its memorandum in support of its motion for summary judgment, the County accused WeavTel of failing to solve the floodplain issue "through the regular permitting process—involving FEMA," which is the very process that WeavTel followed to obtain the CLOMA (Ct. Rec. 27 at 4).

It is undisputed that many citizens in the Stehekin area strongly objected to WeavTel's project and were vocal to the County regarding their position at the same time that the County refused to accept the FEMA issued CLOMA instead of a LOMA. In its reply brief, the County concedes that it "may even have acted negligently," but contests that the decisions were "irrational or arbitrary" (Ct. Rec. 126 at 16). The distinction between those two standards in this case raises a genuine issue of material fact that should be decided by a jury.

The next issue is whether the BOCC acted arbitrarily in their repeated denial of WeavTel's rezoning requests. *See Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir. 1988). The County argues that WeavTel also could have moved orally to the BOCC to amend the floodplain level, and that if Weavtel had orally moved for that amendment at a BOCC meeting, that the amendment would have unquestionably been granted at that same meeting (Ct. Rec. 27 at 12; affidavit at Ct. Rec.31 at 19). However, as WeavTel points out, the official minutes of the February 28, 2006, hearing show that WeavTel made an oral motion for the amendment request and

ORDER REGARDING SUMMARY JUDGMENT                              Page 16

the BOCC denied the motion (Ct. Rec. 44-1 at 8). In the second hearing before the BOCC, WeavTel's rezoning request again was denied because it did not "pass the straight face test"(Ct. Rec. 44-1 Ex. E[3] ). The Court finds that there is sufficient evidence to raise a genuine issue of material fact as to whether the County's denial of WeavTel's motions to rezone the property were irrational and arbitrary decisions that violated WeavTel's due process rights.

The Court finds that Defendant has failed to demonstrate the absence of a genuine issue of material fact regarding whether Defendant acted in an irrational and arbitrary manner thereby violating Plaintiff's Constitutional rights. *See Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).

Accordingly,

**IT IS ORDERED** that:

1. Chelan County's Motion for Summary Judgment (**Ct. Rec. 26**) is **GRANTED** in part and **DENIED** in part, as outlined in this Order.

2. WeavTel's claim of tortious interference with business relations is **DISMISSED WITH PREJUDICE**.

---

[3] The Court overruled Defendant's objections to Exhibit D for purposes of this motion (see Order Addressing Defendant's Motions to Strike).

The District Court Executive is directed to enter this Order and provide copies to counsel.

**DATED** this 9th day of July, 2010

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
Untied States District Court Judge
