1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                  EASTERN DISTRICT OF WASHINGTON

7   WESTGATE COMMUNICATIONS,
    LLC, a Washington limited liability        NO:  CV-08-04-RMP
8   company, d/b/a "WEAVTEL,"
                                                FINDINGS OF FACT AND
9                          Plaintiff,           CONCLUSIONS OF LAW
       v.
10
    CHELAN COUNTY,
11
                          Defendant.
12

13                              **INTRODUCTION**

14       A bench trial was held in the above-captioned case on February 22 – 24, 2012.

15   Michael J. Kelly and Joseph O. Baker appeared for the Plaintiff, Westgate

16   Communications, LLC ("Westgate").  Heather Yakely appeared for the Defendant,

17   Chelan County.  The Court heard testimony in open court from: Nathan Pate, Brian

18   Frampton, Richard J. Weaver, Robert Dodge, Daniel Trampush, Clay Sturgis, Neil

19   Beaton, Commissioner Keith Goehner, Commissioner Ronald Walter, and Joseph

20

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 1

Blaschka, Jr.  All of the exhibits that were admitted in evidence have been reviewed and considered by the Court.

Having considered all of the evidence presented at the bench trial, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Civ. P. 52(a).

## FINDINGS OF FACT

The Court makes the following findings of fact from the evidence and testimony presented at the bench trial:

1. Plaintiff Westgate Communications, LLC ("Westgate") is a limited liability company organized under the laws of the State of Washington and doing business as WeavTel.

2. Defendant Chelan County is a political subdivision of the State of Washington.

3. Stehekin is an unincorporated region in Chelan County, Washington.

4. Westgate was designated as an Eligible Telecommunications Carrier ("ETC") for Stehekin by the Washington Utilities and Transportation Commission.

5. Westgate sought to operate as an Incumbent Local Exchange Carrier in Stehekin.

6. Richard Lane Weaver was the original manager of Westgate.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 2

7. Richard Lane Weaver passed away prior to trial in this matter.

8. Richard Jude Weaver is the son of Richard Lane Weaver and is the present manager of Westgate.

9. In seeking to provide local telephone service to Stehekin, Westgate sought to build facilities on property it had acquired in Stehekin.

10. Westgate hired attorney Robert Dodge to facilitate acquiring permits necessary to build the facilities, specifically an Administrative Use Permit ("AUP").

11. On March 23, 2005, Westgate hand delivered to Chelan County Department of Building, Fire Safety, and Planning an application with attached cover letter seeking a permit to build a single family residence and low impact utility.

12. The low impact utility was a "wire center" to be used in conjunction with facilities that Westgate planned to build on federal land.

13. While Westgate sought to acquire an AUP, Westgate erroneously used the form for a Conditional Use Permit ("CUP"). The AUP and CUP forms are similar, but diverge at each form's fifth section.

14. On March 29, 2005, Mr. Dodge delivered a letter supplementing the application and attempting to address the factors listed in section five of

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 3

the AUP form rather than resubmitting the application on the correct

AUP form.

15. The land on which Westgate intended to build the single family residence

and the wire center was located on land listed as part of the floodplain by

Chelan County maps.

16. At the time of Westgate's application, Nathan Pate was a senior planner

for Chelan County and was assigned as lead planner on Westgate's

March 23, 2005, AUP application.

17. On April 12, 2005, Mr. Pate sent a letter to Mr. Dodge outlining nineteen

deficiencies in the March 23, 2005, application that rendered the AUP

application incomplete.

18. Item number ten in Mr. Pate's letter informed Mr. Dodge that the Chelan

County Shoreline Master Program Maps identified the property to be

within the floodplain and, as a result of that designation, the project was

subject to the Chelan County Shoreline Master Program ("SMP").

19. On May 12, 2005, Mr. Dodge sent a letter responding to the nineteen

issues raised in Mr. Pate's letter and supplementing his application with

proposed floor plans.  With regard to the floodplain jurisdiction and

applicability of the SMP, Mr. Dodge contested the applicability of the

SMP to Westgate's property.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 4

20. Chelan County's floodplain maps were based in part on FEMA's floodplain maps.

21. On May 17, 2005, Mr. Pate sent a letter to Mr. Dodge informing Westgate that despite the additional information provided in Mr. Dodge's May 12, 2005, letter, the application was still incomplete.  On July 11, 2005, Richard Jude Weaver sent a letter to Mr. Pate informing Mr. Pate that Westgate had applied for a Letter of Map Amendment ("LOMA") from the Federal Emergency Management Agency ("FEMA").  Mr. Weaver stated that he expected that the LOMA would amend the FEMA maps and remove Westgate's property from the floodplain, terminating Chelan County's SMP jurisdiction.  Mr. Weaver requested that Mr. Pate leave the application open while the FEMA application was pending.

22. On July 19, 2005, Mr. Pate sent a letter to Mr. Dodge informing Westgate that Westgate's failure to address deficiencies specified in the County's notice of incomplete letters, combined with Westgate's failure to file a complete AUP application in a timely fashion, had rendered the March 23, 2005, AUP application null and void.

23. Westgate filed its second AUP application along with a new cover letter on September 20, 2005.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 5

24. On October 4, 2005, Mr. Dodge e-mailed Larry Angell, then the director of the Chelan County Department of Building, Fire Safety, and Planning, requesting that the September AUP application be assigned to someone other than Mr. Pate.

25. On October 6, 2005, Mr. Angell e-mailed Mr. Dodge to inform him that he had assigned the application to another planner, Brian Frampton.

26. On October 10, 2005, Mr. Frampton sent Westgate a notice that the September 20, 2005, application was incomplete and requested supplementation of the application with regard to three subject areas.

27. Westgate submitted supplemental information in response to Mr. Frampton's notice of incompleteness.

28. In addition, Westgate received a Conditional Letter of Map Amendment ("CLOMA") from FEMA adjusting the height of the floodplain on Westgate's property in Stehekin.

29. On November 17, 2005, Mr. Frampton sent a letter to Westgate noting that while most of the information sought by the notice of incomplete had been provided by Westgate, the AUP application was still incomplete. In the letter, Mr. Frampton rejected the CLOMA as a basis for modifying Chelan County's floodplain maps, because the CLOMA was a non-final amendment. Mr. Frampton also explained that because Chelan County's

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 6

floodplain maps were not modified, Westgate's proposed project continued to be subject to the SMP and that Westgate would have to complete a Shoreline Substantial Development permit application before an AUP could be issued.

30. On November 23, 2005, Mr. Dodge sent a letter to Mr. Frampton further supplementing the information required for the AUP application.  With regard to the CLOMA, Mr. Dodge asserted that the failure of Chelan County to modify its maps in response to the CLOMA placed Westgate in a "Catch-22."  Mr. Dodge argued that a CLOMA produced with regard to a particular project only becomes final after the project is built. Therefore, by requiring a final map amendment by FEMA prior to Chelan County's changing its floodplain maps, Chelan County was effectively requiring Westgate to build its project before it would be granted an AUP permit to build its project.

31. On December 6, 2005, Mr. Frampton called FEMA and was told that a CLOMA was temporary and did not effect a map change.  However, if a project is built successfully consistent with the CLOMA, then FEMA would issue a LOMA ("Letter of Map Amendment") which would remove Westgate's property from the floodplain for purposes of FEMA.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 7

32. On December 9, 2005, a meeting was held between Mr. Dodge and Mr. Frampton.

33. As a result of that meeting, Mr. Frampton sent a letter to Mr. Dodge on December 16, 2005, outlining three points.  First, Chelan County asserted that the CLOMA did not amend the floodplain maps as Westgate claimed, and Westgate's property was subject to the SMA because it was in the shoreline jurisdiction.  Accordingly, Westgate would have to file a Shoreline Substantial Development Permit before an AUP could be issued.  Second, Chelan County offered to engage in a formal administrative code interpretation regarding the proposed storage of a backup generator, fuel, and other items at the proposed location to determine whether the items were considered "equipment storage" under county zoning ordinances.  Third, Chelan County was giving Westgate notice that Westgate's project may be subject to additional restrictions based on proximity to fish and wildlife habitat absent some exception.

34. On December 19, 2005, Mr. Dodge emailed Chelan County officials, including Mr. Frampton, again asserting that the CLOMA issued by FEMA should be sufficient to remove Westgate's property from the SMP jurisdiction of the county, obviating the need for Westgate to submit a substantial development permit.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 8

35. On December 29, 2005, Mr. Dodge sent a letter to Mr. Frampton formally requesting a revision of Chelan County's floodplain map pursuant to Section 11.84.020 of the Chelan County Code. Section 11.84.020 provided an avenue to modification of the floodplain without modifying FEMA's floodplain maps. Westgate requested that the floodplain be changed to reflect a base flood elevation of 1106.5 feet for Westgate's property, which was the same floodplain elevation determined by FEMA in its CLOMA.

36. The Chelan County Board of Commissioners ("Board") has three elected county commissioners. One commissioner holds the position of chairman and a different commissioner holds the position of chairman pro tempore. Where the chairman is absent or cannot perform his duties, the chairman pro tempore acts as chairman.

37. At all times relevant to this case, the county commissioners were Buell Hawkins, Keith Goehner, and Ronald Walter. Buell Hawkins occupied the position of chairman and Keith Goehner was chairman pro tempore.

38. On January 13, 2006, Mr. Frampton responded to an e-mail sent by a citizen of Stehekin regarding Westgate's proposed project. Mr. Frampton copied Commissioner Hawkins and Nathan Pate on the e-mail.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 9

39. In late January 2006, Commissioner Hawkins engaged in an e-mail conversation about setting up a public hearing in Stehekin regarding Westgate's requested AUP.  Public hearings are not required for AUP applications.  Additionally, public hearings usually are not held in Stehekin, which is a remote location.  Ultimately, no hearing was held in Stehekin.

40. On February 10, 2006, Commissioner Hawkins e-mailed a resident of Stehekin forwarding an e-mail that purported to be from a member of the National Park Service who would be providing testimony at a public hearing on Westgate's request to change Chelan County's floodplain maps.

41. The Chelan County Department of Building, Fire Safety, and Planning produced a report on Westgate's request to change the floodplain.  The report ultimately recommended rejecting Westgate's proposed change of the base flood elevation to 1106.5 feet but recommended approval of a change of the base flood elevation to 1108.24 feet.

42. On February 28, 2006, a public meeting of the Board was held in Wenatchee.  At that meeting, Westgate's application to modify the base flood elevation of its property to 1106.5 feet was addressed.  Commissioner Hawkins recused himself from the hearing process.  Mr.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 10

Dodge was present at the hearing and orally moved to modify Westgate's request to the recommended elevation of 1108.24 feet.  Commissioners Goehner and Walter declined to accept Mr. Dodge's oral modification motion and did not address the revised 1108.24 foot proposal.  The Board rejected Westgate's previous 1106.5 foot proposal.

43. On March 1, 2006, Westgate applied in writing to Chelan County for a revision of the floodplain, pursuant to Section 11.84.020 of the Chelan County Code, to reflect a base flood elevation of 1108.24 feet for Westgate's property.

44. The Chelan County Department of Building, Fire Safety and Planning issued a report on the application in which it recommended granting the 1108.24 flood elevation change.

45. On June 6, 2006, a public meeting of the Board was held in Wenatchee.  At that meeting, Westgate's second application to modify the base flood level of its property was addressed.  Commissioner Hawkins again recused himself from the hearing process.  After presentation of evidence, Commissioner Walter moved to deny the application saying that it did not meet the "straight face test."  Commissioner Goehner did not second the motion to deny the application.  By operation of Chelan County's rules, the motion failed for want of a second.  Based on the

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 11

1    split, no action by the board was taken with respect to Westgate's

2    application to modify the floodplain elevation, and Westgate's

3    application was effectively defeated.

4    46.Westgate appealed the board's de facto denial of its application to modify

5    the floodplain by filing a Land Use Petition Action ("LUPA") in Chelan

6    County Superior Court.

7    47.Westgate and Chelan County settled the LUPA, and Chelan County

8    amended is floodplain map to exclude Westgate's property.

9    48.Chelan County granted Westgate's September 20, 2005, AUP application

10    and issued an AUP to Westgate on November 16, 2006, allowing the

11    building of the proposed single-family residence and low impact utility

12    subject to meeting certain conditions.

13    49.To date, Westgate has not used the permit.

14    50.During the permitting process, Nathan Pate never discussed the substance

15    of Westgate's AUP application with any of the county commissioners,

16    including Commissioner Hawkins.

17    51.During the permitting process, Brian Frampton never discussed the

18    substance of Westgate's AUP application with any of the county

19    commissioners, including Commissioner Hawkins.

20

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 12

52. Commissioner Hawkins did not take part in reviewing Westgate's AUP applications nor did he take part in the hearings on Westgate's applications to change the floodplain designation.

53. Neither Commissioner Walter nor Commissioner Goehner discussed either of Westgate's applications to modify the floodplain maps with Commissioner Hawkins.

54. No commissioner discussed the project with any other commissioner outside of a public hearing.

55. Westgate's proposed project to bring telephone service to Stehekin was vocally and vigorously opposed by some residents of Stehekin.

56. Nathan Pate was not aware of opposition to the project while Mr. Pate was determining the completeness of Westgate's March 23, 2005, AUP application.

57. Brian Frampton was not aware of opposition to the project while Mr. Frampton was determining the completeness of Westgate's September 20, 2005, AUP application.

58. Opposition to Westgate's Stehekin project had been raised at public Board meetings prior to Westgate's application to modify the floodplain maps.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 13

59. Westgate filed the instant action on January 4, 2008, alleging a cause of action under 42 U.S.C. § 1983 for violations of equal protection, substantive due process, and procedural due process.  Westgate also alleged a cause of action for tortious interference with a business expectancy.

60. The Court dismissed Westgate's tortious interference with a business expectancy claim at summary judgment.  ECF No. 142 at 17.

61. On the fourth day of the bench trial, the Court granted Westgate's oral motion to dismiss its Equal Protection claims.

## CONCLUSIONS OF LAW

The Court makes the following conclusions of law:

1.  The remaining claims before this Court are Westgate's 42 U.S.C. § 1983 claims for violation of its procedural and substantive due process rights.

**Section 1983 Standard**

2.  Section 1983 does not itself confer any rights, but is merely a mechanism by which a plaintiff may enforce rights secured elsewhere.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) (citing *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979)).

3.  To state a cause of action against a person under § 1983, a plaintiff must establish (1) that the person was acting under color of state law, and (2)

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 14

that the person deprived the plaintiff of any rights, privileges, or immunities secured by the Constitution or other law of the United States. *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 872 (9th Cir. 2011).

4. The parties agree, and the Court concludes, that all actions alleged to have deprived the Plaintiff of its constitutional rights were made under color of state law.

5. Where the person against whom liability is sought is a county, it is not enough for the plaintiff to establish merely a deprivation of rights by an employee of the county. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-79 (1986) (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691-92 (1978)). In other words, there is no theory of respondeat superior in § 1983 actions versus municipalities. *Id.* at 478.

6. A plaintiff under § 1983 has three ways to establish the liability of a county: "First, the plaintiff may prove that a [county] employee committed the alleged constitutional violation pursuant to a formal government policy or a 'longstanding practice or custom which constitutes the "standard operating procedure" of the local governmental entity.'" *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). "Second, the plaintiff may establish that the individual who committed

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 15

the constitutional tort was an official with 'final policy-making authority'
and that the challenged action itself thus constituted an act of official
governmental policy." *Id.* (quoting *Pembaur*, 475 U.S. at 480-81).
"Third, the plaintiff may prove that an official with final policy-making
authority ratified a subordinate's unconstitutional decision or action and
the basis for it." *Id.* at 1346-47 (citing City of St. Louis v. *Praprotnik*,
485 U.S. 112, 127 (1988)).

7.  During trial, Westgate argued that there were four denials that constituted
    actions that should bind Chelan County and give rise to liability: (1) the
    denial of the application to change the floodplain to 1106.5 feet; (2) the
    denial of the oral motion to modify the application to change the
    floodplain to 1108.24 feet; (3) the denial of the first AUP; and (4) the
    denial of the second AUP.

8.  The February 28, 2006, decision by the Board to deny Westgate's
    application to modify the floodplain to 1106.5 is a final decision by the
    legislative authority of Chelan County.  Accordingly, it is an action that
    binds the county and may give rise to liability under § 1983.

9.  The June 6, 2006, failure to second the motion to deny Westgate's March
    1, 2006, application to modify the floodplain to 1108.24 feet effectively
    terminated Westgate's application and constituted a final decision by the

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 16

legislative authority of Chelan County.  Accordingly, it is an action that

binds the county and may give rise to liability under § 1983.

10. The first AUP application was never formally denied.  Instead, the AUP

application became null and void by operation of law pursuant to Section

14.08.030(3) of the Chelan County Code.  Therefore, the Court must

determine whether any of the letters sent by Nathan Pate regarding the

completeness of the first AUP application constituted an action sufficient

to give rise to liability under § 1983.  As the Court ultimately finds this

claim deficient on other grounds, the Court declines to answer whether

any of the Mr. Pate's actions were sufficient to bind the county and give

rise to a claim under § 1983.

11. The second AUP application was ultimately granted after the parties

settled the LUPA.  As with the first AUP application, the Court declines

to decide whether any of the interlocutory actions taken by Brian

Frampton constituted an action that could give rise to liability under

§ 1983 because it is deficient on other grounds.

**Due Process Property Interest**

12. To state a claim for a violation of substantive or procedural due process a

plaintiff must first establish that it has been deprived of a constitutionally

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 17

protected life, liberty, or property interest. *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008).

13. To have a property interest in a permit, a plaintiff must "have a legitimate claim of *entitlement* to it." *Gerhart v. Lake Cnty., Montana*, 637 F.3d 1013, 1019 (9th Cir. 2011) (emphasis in original).

14. A plaintiff has a legitimate claim of entitlement to a permit where regulations mandate that a permit issue after certain requirements are satisfied and those requirements have been satisfied. *Gerhart*, 637 F.3d at 1019 (citing *Groten v. California*, 251 F.3d 844, 850 (9th Cir. 2001)).

15. Where a decision maker's discretion is not significantly limited, there is no legitimate claim of entitlement to a permit. *See Gerhart*, 637 F.3d at 1019-1020.

16. Even if written regulations do not restrict the discretion of a decision maker, a plaintiff may have a legitimate claim of entitlement pursuant to the policies and practices of the county. *Gerhart*, 637 F.3d at 1020 (citing *Perry v. Sindermann*, 408 U.S. 593, 601 (1972)).

17. The Chelan County Code ("Code" or "CCC") prescribes a process by which permit applications are addressed. After an application is filed, the Chelan County Department of Building, Fire Safety and Planning

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 18

1    ("Department") has twenty-eight days to determine whether an

2    application is complete.  CCC § 14.08.030(1).[1]

3    18. The Code enumerates categories of information that must be contained in

4    a permit application for that application to be considered complete.  CCC

5    § 14.08.030(2)(A)-(H).  One of the requirements is that the application

6    contains "[a]ny additional information . . . required by applicable

7    development standards, plans, policies or any other federal, state or local

8    laws."  CCC § 14.08.030(2)(F).

9    19. Chelan County's Shoreline Master Program ("SMP") imposes additional

10    permitting requirements to shorelines and their related wetlands.  SMP §

11    5.1.

12    20. The SMP defines "wetlands" to include land contained within the 100

13    year floodplain.  SMP § 7.2.810.

14    21. Chelan County's maps designated Westgate's land as within the

15    floodplain and subject to the SMP.

16    [1]The Code has been amended since the events giving rise to this litigation

17    took place.  The Defendant submitted portions of the Code as exhibits 299 and

18    300.  Those exhibits were admitted at trial without objection by the Plaintiff.

19    When the Court cites to provisions of chapter 11 or 14 of the Code, it is citing to

20    the provisions as reflected in exhibits 299 and 300 respectively.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 19

22. The CLOMA procured by Westgate was non-final and did not change FEMA's definition of the floodplain, and therefore did not change Chelan County's definition of the floodplain, because the CLOMA was conditioned on completion of the proposed project.

23. Accordingly, prior to the modification of the floodplain maps subsequent to Westgate's LUPA action, Westgate's property was included in the floodplain and subject to the requirements of the SMP.

24. Non-exempt uses subject to the SMP must complete a substantial development permit.  *See* SMP § 11.

25. While a single-family home is permitted outright and does not require a substantial development permit, SMP § 11.7, the proposed wire center is not exempt from the substantial development permit requirement, *See* SMP § 11; *See also* SMP § 25.

26. The March 23, 2005, AUP was never complete because it did not contain the substantial development permit request information as required by the SMP.  Accordingly, from the time the March 23, 2005, AUP application was filed until it was rendered null and void by operation of law, Westgate never had a legitimate expectation that the permit should issue.  Therefore, Westgate never had a property interest with regard to the March 23, 2005, AUP application.  Thus, Westgate cannot show that it

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 20

was deprived of a property right with respect to the March 23, 2005, AUP application.

27. The September 20, 2005, application remained incomplete for want of a substantial development permit application until Chelan County modified the floodplain following the filing of the LUPA action.  After the floodplain map was changed and the AUP application was found to be complete, the County followed its ordinances until the permit was issued. Therefore, from the time the September 20, 2005, AUP application was filed until the time the permit was issued, Westgate never had a legitimate expectation that the permit should issue.  Accordingly, Westgate never had a property interest with regard to the September 20, 2005, AUP application until Westgate was actually granted the permit. Therefore, Westgate cannot show a property deprivation regarding the September 20, 2005, AUP application or permit.

28. At the February 28, 2006, and June 6, 2006, Board meetings, Westgate sought modification of Chelan County's floodplain maps under CCC 11.84.020, which is an alternative way to the LOMA to modify the floodplain maps.

29. Section 11.84.020 of the Code reads:

> Best available science will be used in the designation of the County's frequently flooded areas.  The Flood Insurance Rate

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 21

Maps (FIRM) and Floodway maps along with the *Flood Insurance Study – Chelan County* prepared by the National Flood Insurance Program (NFIP) are adopted as the formal designation for Frequently Flooded Areas.  Upon review and approval by the County, subsequent studies delineating the boundaries of the floodways and floodway fringe areas of the 100-year flood plains for the County, or portion thereof, shall constitute the best available science and be utilized as the official designation information for frequently flooded areas.  A review committee comprised of the directors of the department of Building, Fire Safety and Planning, and the Public Works Department shall review each set of new information to make a recommendation to the Chelan County Board of Commissioners whether it should be adopted as new designation criteria.  Before final adoption, this will be distributed for public and agency review.

When base flood elevation data is not available from the above information to designate frequently flooded areas, the above defined review committee shall obtain, review and reasonably utilize any base flood elevation data and floodway data available from federal and state governmental agencies or other sources including but not limited to historical data, high water marks or photographs of past flooding to make the appropriate designations.

30. Section 11.84.020 ultimately conditions designation of frequently flooded areas on "review and approval by the County."

31. No ordinance restricts the discretion of the Board in making this determination on behalf of Chelan County.

32. No evidence in the record suggests a historical policy or practice of the County regarding floodplain map changes that would limit the Board's discretion.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 22

33. In light of the Board's discretion in determining whether to modify floodplain maps under CCC § 11.84.020, Westgate had no legitimate expectation of a map amendment. Accordingly, neither the December 29, 2005, nor March 1, 2006, application to modify the floodplain gave rise to a property interest for the purposes of due process.

34. The Court concludes that Westgate has failed to establish that it possessed a property interest and that Chelan County deprived it of that property interest. Accordingly, Westgate's § 1983 claims for violations of substantive and procedural due process must fail.

**Substantive Due Process**

35. Even if the Court had found that Westgate possessed and was deprived of a property interest, which the Court did not find, to state a claim that a land use action deprived a plaintiff of substantive due process, that plaintiff must establish that the land use action failed to advance any legitimate governmental purpose. *Shanks*, 540 F.3d at 1088 (citing *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 484 (9th Cir. 2008)).

36. When the issue is a discrete permitting decision, the plaintiff must establish "'egregious official conduct that can be said to be "arbitrary in the constitutional sense;"'" such conduct "must amount to an 'abuse of power' lacking any 'reasonable justification in the service of a legitimate

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 23

1    governmental objective.'" *Shanks*, 540 F.3d at 1088 (quoting *Cnty. of*

2    *Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

37. Conduct that is merely unwise or legally erroneous is insufficient to give

rise to a substantive due process claim. *See Shanks*, 540 F.3d at 1089.

38. Westgate has failed to meet its burden to show by a preponderance of the

evidence that any of Mr. Pate's actions regarding the March 23, 2005,

AUP application process or Mr. Pate's determinations that such

application was incomplete rise to the level of being arbitrary and

capricious.

39. Westgate has failed to meet its burden to show by a preponderance of the

evidence that any of Mr. Frampton's actions regarding the September 20,

2005, AUP application process or Mr. Frampton's determinations that

such application was incomplete rise to the level of being arbitrary and

capricious.

40. Westgate has failed to meet its burden to show by a preponderance of the

evidence that Commissioner Keith Goehner acted arbitrarily and

capriciously in his involvement with this case.

41. Westgate has failed to meet its burden to show by a preponderance of the

evidence that Commissioner Ronal Walter acted arbitrarily and

capriciously in his involvement with this case.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 24

42. Westgate has failed to meet its burden to show by a preponderance of the evidence that the Board acted arbitrarily and capriciously in denying Westgate's applications to modify the floodplain.

**Procedural Due Process**

43. "To obtain relief on a procedural due process claim, [a] plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Shanks*, 540 F.3d at 1090 (quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

44. The Court already has concluded that Westgate has failed to establish that it had a liberty or property interest or that it was deprived of a liberty or property interest. On that basis, Westgate's procedural due process claim fails.

45. Accordingly, all of Westgate's claims either have failed or been dismissed.

Therefore, **IT IS HEREBY ORDERED:**

1. The District Court Executive shall enter **JUDGMENT** for the Defendant Chelan County.

2. The Defendant's Motion for Judgment as a Matter of Law, **ECF No. 208,** is **DENIED AS MOOT**.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 25

3.  All other pending motions are hereby **DENIED AS MOOT**.

4.  The Defendant shall submit a bill of costs in compliance with LR 54.1.

5.  The Court awards no attorney's fees.

**IT IS SO ORDERED**. The District Court Executive is hereby directed to enter this Order, to provide copies to counsel, and **CLOSE** this file.

**DATED** this 5th of March 2012.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
Chief United States District Court Judge

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 26